## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re Michael John Hernandez,              **Civil Case No. 15-3844 (SRN)**
                    Debtor.

Michael John Hernandez,
                                                   **MEMORANDUM**
            Appellant,                             **OPINION & ORDER**

      v.

General Mills Federal Credit Union,

            Appellee.

---

Larry E. Reed, Reed Law Offices, PO Box 43596, Minneapolis, Minnesota 55443, for Appellant

Daniel W. Fram and Meggan E. Lindsay, Felhaber Larson, 220 South Sixth Street, Suite 2200, Minneapolis, Minnesota 55402, for Appellee

---

SUSAN RICHARD NELSON, United States District Judge

      Appellant Michael John Hernandez appeals from a September 29, 2015 Order for

Judgment and Judgment of the United States Bankruptcy Court for the District of

Minnesota ("Bankruptcy Court") in the matter of In re Michael John Hernandez, Adv.

No. 14-BR-4095-MER.  (Order for Judgment [Doc. No. 1-5]; Judgment [Doc. No. 1-6].)

For the reasons set forth herein, Appellant's appeal is denied and the Bankruptcy Court's

Order for Judgment and Judgment are affirmed.

## I.     BACKGROUND

### A.     Procedural Background

      In March 2014, Michael Hernandez filed for Chapter 7 bankruptcy in Bankruptcy

Court.  (Ch. 7 Pet. [Doc. No. 1], In re Hernandez, No. 14-41335 (Bankr. D. Minn.).)  In

July 2014, Michael Hernandez received a general discharge of his debts in the Chapter 7

proceeding.  (Tr. of 9/28/15 at 6) (reciting procedural history).

Shortly after Hernandez filed his Chapter 7 proceeding, Appellee General Mills

Federal Credit Union ("the Credit Union") filed the underlying adversary proceeding in

Bankruptcy Court on May 21, 2014.[1]  In its adversary complaint, the Credit Union sought

a monetary judgment based on Hernandez's default of a loan and a declaration of

nondischargeability of debt in the Chapter 7 proceedings.  (Compl. at 3-4, Adv. No. 14-

41335-MER (D. Minn. Bankr. 2014).)  The Credit Union alleged that the debt in question

was nondischargeable based on actual fraud under 11 U.S.C. §523(a)(2)(A).  (Id. ¶ 6.)

Specifically,  the Credit Union asserted that Hernandez fraudulently prepared and

executed powers of attorney for his grandparents, Stella R. Hernandez and Joseph

Hernandez ("the Hernandezes"), so that Appellant could obtain a home-equity loan from

the Credit Union in 2005.  (Id. ¶¶ 6-10.)

The Credit Union's adversary proceeding was tried before United States

Bankruptcy Judge Michael E. Ridgway on March 3-4, 2015.  The Bankruptcy Court

admitted numerous exhibits in evidence and heard testimony from the following

witnesses:  (1) Michael Hernandez; (2) Harry Charles Ross, III, a Credit Union

representative; (3) Cheryl L. Engh, a notary public and court reporter; (4) Vicki Giller,

---

[1] General Mills Federal Credit Union changed its name to Mill City Credit Union
("Mill City") in 2014.  Because General Mills and Mill City Credit Union are the same
entity, the Court simply refers to the entity as "the Credit Union."

Michael Hernandez's cousin; and (5) Regina Griffith, Michael Hernandez's sister. (See Witness and Ex. Records [Doc. Nos. 6-33 & 6-34].)

After the submission of post-trial briefing and responsive memoranda, the parties reconvened on September 28, 2015, at which time Judge Ridgway orally stated his findings and conclusions on the record.  (Tr. of 9/28/15 at 5-34.)  On September 29, 2015, Judge Ridgway issued his written Findings of Fact, Conclusions of Law and Order for Judgment, finding that Michael Hernandez's debt to the Credit Union in the amount of $122,115.25 was not subject to discharge from his Chapter 7 bankruptcy debt.  (Order for Judgment at 1 [Doc. No. 1-5].)  He further dismissed with prejudice a counterclaim filed by Hernandez against the Credit Union and ruled that each party would bear its own attorney's fees and costs.  (Id.)   Also on September 29, 2015, the Bankruptcy Court entered Judgment, consistent with Judge Ridgway's ruling.  (Judgment [Doc. No. 1-6].)

The Bankruptcy Court maintained jurisdiction over Hernandez's Chapter 7 case and the adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The Bankruptcy Court's Order for Judgment is a final, appealable order.  Michael Hernandez filed a timely notice of appeal under 28 U.S.C. § 158(a), which gives the district courts of the United States jurisdiction to hear bankruptcy appeals.

### B.    Factual Background

#### 1.    The Property Loans

Stella and Joseph Hernandez, grandparents of Appellant Michael Hernandez, owned a residence at 241 Dayton Ave in St. Paul, Minnesota.  (Tr. at 194-95 [Doc. No.

3

7].)[2]  The residence had three separate living units.  (Tr. at 196.)  Appellant testified at

trial that in 2003, his grandfather was struggling financially and asked Appellant to

become the owner of the residence.  (Tr. at 194.)  Under the proposed arrangement,

Appellant would take out a new mortgage, pay off the existing mortgage, and rent out two

of the living units to offset the cost of the mortgage payments.  (Id.)  On June 19, 2003,

Stella and Joseph Hernandez executed a quitclaim deed, transferring title in the property

to their grandson, Michael Hernandez, but reserving a life estate in the property for

themselves.  (Trial Ex. 1.)  At the time when the grandparents deeded the property to

Appellant, the mortgage on the property was in the amount of $144,000.  (Tr. at 269.)

In October 2003, Appellant obtained a $185,000 mortgage on the property from

the Credit Union, using the loan to pay off his grandfather's mortgage and to pay off

Appellant's own personal debt.  (Tr. at 198; 270.)  Stella, Joseph, and Michael Hernandez

were present at the closing and each individually signed for the mortgage.  (Tr. at 19;

200.)

In approximately April 2004, Appellant obtained a $30,000 home equity loan from

the Credit Union.  (Tr. at 201.)  Appellant testified that the additional loan was necessary

because Stella Hernandez would not allow him to rent out two of the living units.  (Tr. at

202.)  Neither Stella nor Joseph Hernandez were present at the closing and the loan was

made in the name of Michael Hernandez.  (Tr. at 200.)  Appellant used this loan to

---

[2]  Citations to the trial transcripts of March 3-4, 2015 are indicated as "Tr. at __,"
[Doc. Nos. 7 & 8], while citations to the September 28, 2015 hearing in which the
Bankruptcy Court announced the ruling are to "Tr. of 9/28/15 at __" [Doc. No. 11].

consolidate his personal debt.  (Tr. at 271-72.)  This loan was satisfied on May 9, 2007.  (Trial Ex. F.)

In approximately May 2004, Stella, Joseph, and Michael Hernandez took out a mortgage in the amount of $222,300.  (Tr. at 203; Trial Ex. G.)  This mortgage was obtained from the Credit Union, which eventually sold the mortgage to PHH Mortgage Corporation ("PHH Mortgage").  (Tr. at 203; Trial Ex. 8 ¶ 19.)  Prior to the closing, Appellant obtained power of attorney forms from the Credit Union (the "2004 POAs").  (Tr. at 205.)   The power of attorney authorizations gave Appellant the authority to execute real estate transactions on behalf of his grandparents as their attorney in fact.  (Tr. at 24.)  Appellant testified that he dropped off the two 2004 POA forms for his grandparents to complete.  (Tr. at 205-06.)  Michael Hernandez signed the two 2004 POA forms himself in a spot marked "Specimen Signature of Attorney(s)-in-Fact," for which notarization was not required.  (Id.; Trial Exs. 13 & 14.)  At the closing, Appellant signed and executed the note and mortgage using the 2004 POAs for Stella and Joseph Hernandez.  (Tr. at 273, Trial Exs. 13, 14, G.)  After paying off the previous mortgage, Michael Hernandez received $1,970 in cash back.  (Tr. at 275, Trial Ex. G.)

On March 11, 2005, Michael, Stella, and Joseph Hernandez obtained a home equity loan in the amount of $100,000 ("the Loan") that is the subject of the underlying Bankruptcy Court adversary proceeding.  (Tr. at 13-14, Trial Ex. 2.)  The Loan was secured by a mortgage that was subordinate to the 2004 mortgage.  (Trial Ex. 2.)  In advance of the closing, property title research revealed to the Credit Union the quitclaim deed with the reserved life estate.  (Tr. at 17.)  The Credit Union therefore required all

5

three property owners to be signatories on the Loan.  (Tr. at 19.)  Appellant again

obtained power of attorney forms from the Credit Union.  (Tr. at 213.)  Appellant testified

that his grandparents completed the 2005 power of attorney forms (the "2005 POAs"),

however, Appellant did not provide a specimen signature as attorney in fact in the space

indicated on the 2005 POA forms.  (Tr. at 216-17; Trial Exs. 4 & 5.)  Appellant signed an

affidavit as attorney in fact ("Affidavit by Attorney in Fact"), (Tr. at 214-15), which the

Credit Union required.  (Tr. at 21-22; Trial Ex. 6.)  Appellant alone signed the note for

the Loan on his own behalf and on behalf of his grandparents, as their attorney in fact.

(Tr. at 207; Trial Ex. 2.)

The Credit Union's trial witness, Harry Charles Ross, III, testified that the Credit

Union relied on the authenticity of the 2005 POAs and Michael Hernandez's 2005

Affidavit by Attorney in Fact.  (Tr. at 28-29.)  Furthermore, Ross stated that the Credit

Union had no reason to question the authenticity of the documents at that time.  (Tr. at

29.)  Absent these documents, the Credit Union would not have issued the Loan.  (Id.)

## 2.     Allegations of Fraud in the POAs

Stella Hernandez, who is 86 years old, was unavailable at trial, having relocated to

a nursing home facility in Ohio.  (Tr. at 117.)  Joseph Hernandez passed away in October

2013.  (Tr. at 115-16.)  In support of the Credit Union's allegations that Michael

Hernandez fraudulently prepared and executed the 2005 POAs, the Credit Union offered

the testimony of Vicki Giller.  Vicki Giller is the niece of Stella and Joseph Hernandez.

(Tr. at 114-16.)   Giller testified that her aunt and uncle sought her assistance when they

received foreclosure notices resulting from a payment default related to the $30,000 loan.

(Tr. at 134.)  Ultimately, the overdue amounts were paid and the $30,000 loan did not go into foreclosure.  (Tr. at 156-57.)  Giller testified that she did some research, however, to try to "find out what was going on" and ultimately "learned that there [were] some forged documents."  (Tr. at 134.)  Specifically, Giller testified that she discovered that the signatures on the 2005 POAs were not the actual signatures of Stella and Joseph Hernandez.  (Tr. at 137.)  Because she had assisted her aunt and uncle with medical documents, bills, and checks, Giller stated that she was familiar with the signatures of Stella and Joseph Hernandez, and could therefore tell that the 2005 POA signatures were forged.  (Tr. at 137-38; 185; 188-89.)  In addition, Giller testified that in approximately 2007, her aunt and uncle told her that they had not signed the 2005 POAs, nor had they signed the 2004 POAs.  (Tr. at 140-41.)

The 2004 POAs were purportedly notarized by Edward J. Thompson in Anoka County, (Trial Exs. 13 & 14), and the 2005 POAs were purportedly notarized by Cheryl L. Engh in Hennepin County.  (Trial Exs. 4 & 5.)  However, Giller testified that the Hernandezes were no longer driving and did not have a vehicle in 2004 or 2005.  (Tr. at 150-51.)  Moreover, Giller stated that when her aunt and uncle required any notary services, it was their practice to walk across the street from their home to the Cathedral of St. Paul, in Ramsey County, where a notary was available.  (Id.)

After learning of the allegedly fraudulent POAs, Giller filed a police report with the St. Paul Police Department and, in 2008, sought the assistance of Adult Protective Services to help her aunt revoke the POAs.  (Tr. at 142.)  An August 15, 2008 affidavit signed by Stella Hernandez revoked "any and all Power(s) of Attorney Never given to

Michael Hernandez, specifically the documents on 5/24/2004 & 3/8/2005." (Trial Ex. 7.)

### 3. Ramsey County District Court Lawsuit

In March 2009, Stella and Joseph Hernandez filed suit against Michael Hernandez, the Credit Union, and PHH Mortgage in Ramsey County District Court. (Trial Ex. 8.) In the Ramsey County complaint, Stella and Joseph Hernandez alleged, among other things, that their grandson forged their signatures on the POAs. (Id.) The Hernandezes disclaimed ever signing a power of attorney form giving Michael Hernandez authority as their attorney in fact. (Id. ¶¶ 22-24; 28-31.) In the state court litigation, the Credit Union asserted a cross-claim against Michael Hernandez, alleging that if Stella and Joseph Hernandez were damaged, as alleged in their complaint, such damage was caused by Michael Hernandez. (Trial Ex. 9 ¶ 20.) To the extent that the Credit Union was required to pay Stella and Joseph Hernandez any damages, the Credit Union sought judgment against Michael Hernandez, by way of contribution and indemnity. (Id. ¶ 21.)

Ross, the Credit Union's trial witness, testified in the underlying adversary proceeding that the receipt of the Ramsey County Complaint constituted the Credit Union's first notice that the 2005 POAs used in connection with the Loan were fraudulent. (Tr. at 47.) The Loan went into default in April 2009, after Michael Hernandez lost his job. (Tr. at 43-44.) Prior to that time, Michael Hernandez had made payments on the various loans and mortgages over a six-year period. (Tr. at 43.)

Giller testified that her aunt and uncle failed to appear in court to prosecute their state court lawsuit due to medical problems. (Tr. at 159-60.) However, Michael Hernandez testified that Giller was the motivating force behind the state court lawsuit and

his grandparents chose not to participate in it.  (Tr. at 219.)

On June 14, 2010, the Ramsey County District Court dismissed the complaint with prejudice based on the plaintiffs' "failure to prosecute."  (Trial Ex. 10 at 1.)  The order also stated, "Nothing herein shall be construed to affect, modify or prevent any of the Defendants from enforcement of any rights or remedies they may possess with respect to any liens, interests, mortgage, promissory note or otherwise with respect to the relationships between them and/or any interest in the property at issue in this case."  (Id.) On August 14, 2010, Michael Hernandez, the Credit Union, PHH Mortgage, Federal Home Loan Mortgage Corporation, and Mortgage Electronic Registration Systems, Inc. entered into a stipulation that all of the cross-claims between the defendants be dismissed without prejudice, which the court ordered.  (Trial Ex. 11)

On October 2, 2011, a St. Paul Pioneer Press newspaper feature article discussed the Hernandezes' impending foreclosure, the allegations in the state court lawsuit, and the dismissal of the lawsuit.  (Trial Ex. 22.)  The article quoted Stella Hernandez and Giller. (Id.)

### 4.    Additional Trial Testimony

Michael Hernandez's sister Regina Griffith testified on his behalf at trial.  Griffith stated that she held a power of attorney for Stella Hernandez starting in 2013 and helped her grandmother move to a nursing home facility in Ohio, near where Griffith lives.  (Tr. at 247; 255.)  Griffith testified that her grandmother told her that Michael Hernandez did not forge her signature.  (Tr. at 315.)  Moreover, Michael Hernandez and Griffith testified that although Giller herself served as attorney in fact for Stella Hernandez in 2013, (Tr. at

168), Giller's authority was later rescinded in 2013.  (Tr. at 254-55; 316-17.)  Griffith

explained that her grandmother was not satisfied with Giller's services.  (Tr. at 316.)

Testimony from both Michael Hernandez and Griffith addressed long-standing family

disagreements with Giller over the disposition of certain personal property owned by

Stella Hernandez.  (Tr. at 250-51; 316-20; 323-24.)

Cheryl L. Engh, the notary listed on the 2005 POAs for Stella and Joseph

Hernandez which purportedly bear her signature, (Trial Exs. 4 & 5), testified that she is a

court reporter who maintains a license as a notary public.  (Tr. at 101-03.)  However, she

stated that she does not notarize documents as part of her practice as a court reporter.  (Tr.

at 102.)  Engh testified that the notary's signature on the 2005 POAs is not her signature,

nor could she recall ever signing or notarizing a POA on behalf of Stella or Joseph

Hernandez.  (Tr. at 103-04.)  When shown a newspaper photograph of the Hernandezes,

Engh testified that she did not recognize them and had never met them.  (Id. at 105.)

Michael Hernandez testified that he had never seen Engh and was unaware of any

other notary named Cheryl L. Engh who was licensed in Minnesota.  (Tr. at 280.)  He

testified that he merely dropped off the POA forms for his grandparents to complete.  (Tr.

at 213; 279.)  As to whether Michael Hernandez recognized the signatures of his

grandparents on the 2005 POAs, he could not answer the question because he "didn't see

them sign [them]."  (Tr. at 279.)  While he admitted to having seen his grandparents sign

other documents a number of times, he could not recognize their signatures because he

had "never paid attention to them."  (Id..)   When further asked if the signatures on the

2005 POAs were authentic, Michael Hernandez responded, "I'm not a handwriting

expert.  I can't make the conclusion."  (Id.)

Michael Hernandez admitted that he did sign the Affidavit by Attorney in Fact, (Trial Ex. 6), in connection with the Loan.  (Tr. at 276.)  The Affidavit cross references the March 8, 2005 POAs in type-written text, (Trial Ex. 6), although Michael Hernandez testified that he could not recall seeing the March date at the time he signed the Affidavit by Attorney in Fact and believes that it was filled in after he signed it.  (Tr. at 302.)   The Affidavit does not refer to the 2004 POAs.  (See Trial Ex. 6.)

As to the 2004 POAs, they bear the notary stamp and signature of Edward J. Thompson.  (Trial Exs. 13 & 14.)  Michael Hernandez testified that he did not know Thompson, although he had had a tenant by that name who signed a lease agreement for a rental property owned by Hernandez.  (Tr. at 289.)  When asked questions about the 2004 loan application for $222,000 and whether Hernandez had provided false information in connection with his application regarding a tenant, Michael Hernandez invoked his Fifth Amendment right against self-incrimination.  (Tr. at 291-92.)   However, after invoking this privilege, he responded as follows to a question posed by his own counsel on re-direct examination:

> Q:     Mr. Hernandez, did you ever knowingly submit a false document to
>        General Mills Credit Union in efforts to obtain a loan?
>
> A:     No.

(Tr. at 299-300.)

## C.     Bankruptcy Court Proceedings

As noted, Michael Hernandez filed for Chapter 7 bankruptcy in March 2014.

Shortly thereafter, in the underlying adversary proceeding filed by the Credit Union against Michael Hernandez, the Credit Union maintained that Hernandez's debt based on the Loan should be excepted from Hernandez's bankruptcy discharge based on a theory of actual fraud.

Following a two-day bench trial and the receipt of post-trial briefing, Judge Ridgway orally issued his findings of fact and conclusions of law from the bench on September 28, 2015. (9/28/15 Tr. at 5-34.) Judge Ridgway first rejected a legal argument raised by Michael Hernandez on summary judgment and in post-trial briefing that the statute of limitations barred the Credit Union's claims. (9/28/15 Tr. at 11.) The Bankruptcy Court found that because the Credit Union did not discover the alleged fraudulent conduct until it was served with the Hernandezes' state court lawsuit in 2009, the Credit Union's adversary proceeding, filed in May 2014, was timely, under the applicable six-year limitations period (Id.)

In addition, the Bankruptcy Court disagreed with another of Michael Hernandez's legal arguments, also raised on summary judgment and post-trial, that the doctrine of res judicata barred the Credit Union's claim for relief. (9/28/15 Tr. at 11-12.) Judge Ridgway acknowledged that while the Hernandezes' state court lawsuit against the Credit Union, Michael Hernandez, and others was dismissed with prejudice for failure to prosecute, the state court ruled that the dismissal did not preclude any of the defendants from enforcing any of their rights. (9/28/15 Tr. at 12.) Moreover, the Bankruptcy Court observed that the state court had dismissed without prejudice the cross claims brought by the defendants in that suit. (Id.) Accordingly, Judge Ridgway found the doctrine of res

judicata unavailing.  (Id.)

    As to evidentiary issues that arose during trial concerning possible hearsay evidence, the Bankruptcy Court provisionally received the testimony during trial and invited the parties to address the admissibility of the evidence in post-trial briefing.  (See 9/28/15 Tr. at 13.)  The evidence in question concerned testimony by witnesses Giller and Griffith about statements made to them by Stella and/or Joseph Hernandez.  (Id.)  In his findings of fact and conclusions of law, Judge Ridgway applied the residual hearsay exception in Federal Rule of Evidence 807, finding that the challenged testimony of both Giller and Griffith satisfied the standard for admissibility.  (9/28/15 Tr. at 14-17.)

    As to the facts adduced at trial, Judge Ridgway found that in March 2005, Stella, Joseph, and Michael Hernandez obtained a loan from the Credit Union in the amount of $100,000 pursuant to a line of credit.  (9/28/15 Tr. at 17.)  The loan agreement and mortgage were executed in the names of Stella, Joseph, and Michael Hernandez.  (9/28/15 Tr. at 18.)  Michael Hernandez signed his grandparents' names as their attorney in fact. (Id.)  The Credit Union required the powers of attorney because Stella and Joseph Hernandez maintained a life estate ownership interest in the property.  (Id.)  In addition, the 2005 loan depleted the remaining equity in the property when combined with the $222,000 first mortgage to PHH Mortgage.  (9/28/15 Tr. at 19.)  At the March 2005 closing, Michael Hernandez signed the affidavit as attorney in fact.  (Id.)  The Credit Union required the affidavit because it was relying on the 2005 POAs.  (Id.)  Judge Ridgway further found, "When Michael Hernandez signed the affidavit by the attorney in fact at the closing, it stated, 'affiant is the attorney in fact or agent named in that certain

power of attorney dated March 8, 2005, executed by Joseph Hernandez and Stella R.

Hernandez.'" (Id.) Accordingly, the Bankruptcy Court determined that Michael

Hernandez represented to the Credit Union that he was the attorney in fact for both Stella

and Joseph Hernandez as a result of the 2005 POAs. (Id.)

   The Bankruptcy Court further found that the 2005 POAs were not actually signed

by Stella and Joseph Hernandez. (9/28/15 Tr. at 20.) While the POAs were purportedly

executed in Hennepin County, Judge Ridgway noted that the trial evidence demonstrated

that the Hernandezes likely would not have traveled outside of Ramsey County for notary

services. (Id.) The Bankruptcy Court found that Michael Hernandez assumed the

property's finances in order to consolidate debt and to assist his grandparents financially.

(Id.) Specifically, the consolidated debt included Michael Hernandez's credit card debt,

student loan debt, and car loan debt. (Id.) In addition, Judge Ridgway found that prior to

Michael Hernandez's assistance, the property had a mortgage of $144,000. (9/28/15 Tr.

at 21.) After Michael Hernandez's involvement in the subsequent mortgages and loans,

the total debt was $332,000. (Id.) While Michael Hernandez made payments on the Loan

for several years, when he lost his job, he defaulted on his payments in April 2009. (Id.)

   As to the credibility of witnesses and weight given to their testimony, the

Bankruptcy Court found that Ross, the Credit Union's witness, testified largely as a bank

representative about the documents contained in the loan portfolio. (9/28/15 Tr. at 25.)

Consistent with Ross' testimony that the 2005 POAs were the power of attorneys used in

connection with the Loan in 2005, (Tr. at 22-23), as opposed to the 2004 POAs, the

Bankruptcy Court found that the 2004 POAs were not part of the 2005 Loan. (Tr. of

14

9/28/15 at 25.)  The Bankruptcy Court questioned the credibility of Giller, noting that she once held power of attorney for Stella Hernandez, which was later revoked.  (Id.) Applying great weight to the testimony of Engh, the notary public, Judge Ridgway noted that Engh had "no axe to grind with either party," and found her disavowal of her purported signature on the 2005 POAs highly credible and "very telling."  (9/28/15 Tr. at 27.)

As to Michael Hernandez, the Bankruptcy Court observed that the gravamen of the Credit Union's claim against Hernandez concerned the intent of Michael Hernandez at the time the Loan was extended in 2005.  (Id.)  Judge Ridgway found that Michael Hernandez's testimony rendered him less credible since Hernandez benefitted from the loans, particularly the $100,000 loan at issue.  (9/28/15 Tr. at 27-28.)

Judge Ridgway identified the following elements required under § 523(a)(2)(A): (1) the debtor made a representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was deliberately made for the purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained a loss as the proximate result of the representation.  (9/28/15 Tr. at 22-23) (citing In re Fryer, 604 F.3d 583, 587 (8th Cir. 2010)).

As to the first element, Judge Ridgway found that Michael Hernandez made a representation to the Credit Union by presenting the 2005 POAs, which purportedly gave Hernandez authority as the attorney in fact for the 2005 loan transaction.  (9/28/15 Tr. at 31.)  In addition, the Bankruptcy Court found that by signing the Affidavit by Attorney in Fact, Michael Hernandez represented to the Credit Union that the 2005 POAs were

15

authentic and that he was authorized to sign the loan agreement and mortgage in his capacity as the attorney in fact for his grandparents.  (9/28/15 Tr. at 31-32.)  The Bankruptcy Court further concluded, as to the second factor under § 523(a)(2)(A), that Michael Hernandez knew at the time that the 2005 POAs were fraudulent.  (Id.)  Judge Ridgway noted Engh's testimony that she did not notarize the POAs and testimony that it would have been quite unusual for the Hernandezes to obtain notary services in Hennepin County.  (9/28/15 Tr. at 32.)  As to the third factor, the Bankruptcy Court found that Michael Hernandez presented the fraudulent POAs in order to deceive the Credit Union.  (Id.)  With respect to the fourth factor, Judge Ridgway noted that the Credit Union's witness Ross testified that the Credit Union would not have processed the Loan had it known the POAs were invalid.  (Id.)  Judge Ridgway therefore found that the Credit Union justifiably relied on Michael Hernandez's representations.  (Id.)  Finally, Judge Ridgway determined that the fifth factor was also met, in that the proximate cause of the Credit Union's financial loss was Michael Hernandez's misrepresentations made in conjunction with the Loan, the POAs, and the Affidavit by Attorney in Fact.  (9/28/15 Tr. at 33.)

    In addition, Judge Ridgway noted Michael Hernandez's invocation of the Fifth Amendment when the Credit Union asked if Hernandez had given false information to the Credit Union.  (9/28/15 Tr. at 28.)  The Bankruptcy Court cited authority for the proposition that in civil proceedings, a court is permitted to draw inferences from a witness's refusal to testify on Fifth Amendment grounds, after other evidence has been admitted that tends to prove each part of the opposing party's case.  (Id.) (citing Allen v.

Illinois, 478 U.S. 364 (1986); Baxter v. Palmigiano, 425 U.S. 308 (1976); Kennedy v.

Mendoza-Martinez, 372 U.S. 144 (1963); Trustmark Nat'l Bank v. Curtis (In re Curtis),

177 B.R. 717, 720 (Bankr. S.D. Ala. 1995).)  Judge Ridgway noted that the invocation of

the Fifth Amendment privilege, standing alone, is insufficient proof of the opposing

party's case, but merely adds to the weight to be given the opposing party.  (9/28/15 Tr. at

30-31.)  In light of the other evidence that the Credit Union produced at trial, the

Bankruptcy Court drew an adverse inference from Hernandez's invocation of the Fifth

Amendment, finding that it added to the weight of Plaintiff's evidence.  (9/28/15 Tr. at

30.)

Judge Ridgway thus concluded that the Credit Union had proved, by a

preponderance of the evidence, that Michael Hernandez committed actual fraud under

§ 523(a)(2)(A).  (9/28/15 Tr. at 33.)  The Bankruptcy Court found that Michael

Hernandez's debt to the Credit Union, totaling $122,115.25, plus interest at the rate of

four percent per annum from and after May 14, 2014, was excepted from discharge.  (Id.)

## II.    DISCUSSION

In an appeal from a bankruptcy court proceeding, this Court acts as an appellate

court, see 28 U.S.C. § 158(a), reviewing the Bankruptcy Court's legal conclusions de

novo, and its findings of fact under the clearly erroneous standard.  See In re Muncrief,

900 F.2d 1220, 1224 (8th Cir. 1990).   "Whether a requisite element of a claim under

§ 523(a)(2)(A) has been satisfied is a factual determination, which we review for clear

error."  R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010).  This

Court may not reverse the Bankruptcy Court's factual findings unless after reviewing the

record it is left with the "'definite and firm conviction that a mistake has been committed.'"  <u>Waugh v. Eldridge (In re Waugh)</u>, 95 F.3d 706, 711 (8th Cir. 1996) (quoting <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573 (1985)).

Michael Hernandez asserts several arguments on appeal, which the Court summarizes as follows: (1) the Credit Union's claims were barred by the statute of limitations; (2) the doctrine of res judicata barred the Credit Union's claims; (3) the Bankruptcy Court's finding that the Credit Union proved by a preponderance of the evidence that Michael Hernandez's conduct was fraudulent pursuant to § 523(a)(2)(A) was clearly erroneous; and (4) the Bankruptcy Court abused its discretion by permitting the introduction of certain evidence.

## A.   Statute of Limitations

Appellant argues that the Bankruptcy Court erred in finding that the statute of limitations did not bar the Credit Union's claims.  The Court reviews this issue de novo, as it is a legal conclusion of the Bankruptcy Court.

Under Minnesota law, actions may be commenced within six years "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Minn. Stat. § 541.05, subd 1(6) (2016); <u>Hope v. Klabal</u>, 457 F.3d 784 (8th Cir. 2006) (holding that under Minnesota law, fraud claims are subject to the discovery rule, from which the limitations period begins to run upon discovery of the facts constituting fraud, or when the facts, by reasonable diligence, should have been discovered).

As the Bankruptcy Court properly found, the evidence established that the Credit

Union did not discover the fraudulent conduct until it was served with the 2009 summons and complaint in the state court lawsuit filed by Stella and Joseph Hernandez.  (Tr. at 47.) In the state court complaint, the Hernandezes alleged that the 2005 POAs were forged. (Trial Ex. 8.)  Ross testified that at the time the 2005 POAs were received by the Credit Union in connection with the Loan, the Credit Union had no reason to suspect or investigate fraud.  (Tr. at 43.)   At that time, payments on the then-existing mortgages or loans were current.  (See Tr. at 43.)  The claim thus accrued when the Credit Union discovered the facts comprising the fraud in 2009.  Because the Credit Union's suit was filed within the six-year limitations period, it was timely filed, as Judge Ridgway found.

### B.    Res Judicata

As noted, Michael Hernandez argues that the Bankruptcy Court erred in finding that the doctrine of res judicata did not bar the Credit Union's suit.  Hernandez contends that the state court's dismissal with prejudice of his grandparents' claims bars relitigation of the Credit Union's claims here.  (Appellant's Mem. at 11 [Doc. No. 12].)  In addition, he asserts that the Credit Union previously argued in state court that the POAs were valid and should not have been permitted to argue otherwise in the bankruptcy proceeding.  (Id. at 12.)

This Court reviews de novo the Bankruptcy Court's ruling on res judicata de novo, as it is a legal conclusion.  See Banks v. Int'l Union Electronic, Elec., Technical, Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004).  Res judicata "'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'"  Plough v. W. Des

Moines Cmty. Sch. Dist., 70 F.3d 512, 517 (8th Cir. 1995) (quoting Smith v. Updegraff, 744 F.2d 1354, 1362 (8th Cir. 1984)).  In addition, the party against whom res judicata is to be applied must have had a full and fair opportunity to investigate and litigate the concluded matter.  Id.

The state court litigation was brought by Stella and Joseph Hernandez against the Credit Union, Michael Hernandez, and PHH Mortgage.  (Trial Ex. 8.)  Subsequent court filings included additional defendants:  Robert Jacobs, Federal Home Loan Mortgage Corporation, and Mortgage Electronic Registration Systems, Inc.  (Trial Ex. 10.)  The relationship between Michael Hernandez and the Credit Union, on the one hand, and some of the other defendants in the state court action, on the other hand, is unclear, as nothing in this record describes some of these defendants.  However, for the sake of argument, the Court will assume that the state court action and the instant action on appeal involve the same parties or their privies.  It also appears that the Credit Union's state court cross-claim against Michael Hernandez for indemnity and contribution based on Hernandez's "unlawful conduct," (Trial Ex. 9 ¶ 2), in a suit in which the plaintiffs alleged that Hernandez forged the 2005 POAs, (Trial Ex. 8 ¶¶ 26-31), arises from the same factual basis as the Credit Union's claim for nondischargeability in the bankruptcy adversary proceeding.

The Court next considers whether the state court's June 14, 2010 ruling constituted a final judgment on the merits.  Both Minnesota Rule of Civil Procedure 41.02(c) and Federal Rule of Civil Procedure 41(b), make clear that a dismissal for failure to prosecute can operate as an adjudication upon the merits, "[u]nless the court specifies otherwise in

its order."   Minn. R. Civ. P. 41.02(c); Fed. R. Civ. P. 41(b).   Here, the Ramsey County

District Court specified otherwise.   (Trial Ex. 10 at 2.)   In its dismissal of the claims of

Stella and Joseph Hernandez with prejudice, the court stated, "nothing herein shall be

construed to affect, modify or prevent any of the Defendants from enforcement of any

rights or remedies they may possess with respect to any liens, interest, mortgage,

promissory note or otherwise with respect to the relationships between them and/or any

interest in the property at issue in this case."   (Id.)   In addition, pursuant to a stipulation

between the defendants, the defendants' cross-claims were dismissed without prejudice.

(Trial Ex. 11.)   Again, the Credit Union's cross-claim against Michael Hernandez was

based, among other things, on the allegations of his fraudulent conduct regarding the

POAs and mortgages.   (Trial Ex. 9 ¶¶ 18, 20-21.)   There was, therefore, no final

adjudication on the merits that bars the Credit Union's adversary suit in Bankruptcy Court

under the doctrine of res judicata.   Nor does the Credit Union's previous position with

respect to the validity of the 2005 POAs bind it to that position in Bankruptcy Court or

require the application of res judicata.

In addition, the party against whom res judicata is asserted must have had a full

and fair opportunity to investigate and litigate the concluded matter.   Plough, 70 F.3d at

517.   No evidence before the Court indicates that such an opportunity existed, as the state

court case languished due to the Hernandezes' inaction.   The state court's dismissal order

notes that the Hernandezes failed to participate in court-ordered mediation, failed to

appear for their Rule 16 conference, and, earlier, failed to comply with the Minnesota

Rules of Civil Procedure.   (Trial Ex. 10 at 1.)   Under these circumstances, it therefore

appears that the Credit Union did not have the requisite opportunity to litigate their cross

claim. For all of these reasons, the Court finds the doctrine of res judicata inapplicable

here. The Bankruptcy Court's ruling in this regard is therefore affirmed.

### C.     Evidentiary Rulings

Michael Hernandez also argues that the Bankruptcy Court erred with respect to

certain evidentiary rulings. Specifically, he contends that the Bankruptcy Court erred by:

(1) admitting an out-of-court statement made by Stella Hernandez through the testimony

of Vicki Giller; (2) admitting a St. Paul Pioneer Press newspaper article that contained

out-of-court statements; and (3) not admitting a certain exhibit offered by Hernandez.

(Appellant's Mem. at 31-32 [Doc. No. 12].)

The Court reviews the Bankruptcy Court's evidentiary rulings under an abuse of

discretion standard of review. See United States v. Van Elsen, 652 F.3d 955, 958 (8th

Cir. 2011); Kelly v. Armstrong, 206 F.3d 794, 802 (8th Cir. 2000). Because a trial court

has wide discretion when considering the probative value of evidence against the "danger

of unfair prejudice, confusion of the issues, or misleading the jury," an appellate court

"will not disturb a [trial] court's evidentiary ruling absent a prejudicial abuse of that

discretion." Kelly, 206 F.3d at 802 (citing Porous Media Corp. v. Pall Corp., 173 F.3d

1109, 1117 (1999); Dillon v. Nissan Motor Co., 986 F.2d 263, 270 (8th Cir. 1993)); see

also In re City of San Bernardino, Cal., 530 B.R. 474, 480 (C.D. Cal. 2015) (citation

omitted) (observing that a reviewing court must find that the bankruptcy court both

abused its discretion and that the evidentiary error was prejudicial in order to reverse on

the basis of an evidentiary ruling).

### 1.      Testimony from Vicki Giller

Hernandez argues that the Bankruptcy Court erred in admitting into evidence the

testimony of Giller regarding a statement purportedly made by Stella Hernandez, namely,

that Stella Hernandez had not signed the 2004 and 2005 POAs.  (Appellant's Mem. at 32

[Doc. No. 12].)  As noted, at trial, Judge Ridgway provisionally admitted this statement as

well as the testimony of defense witness Regina Griffith regarding an essentially

contradictory out-of-court statement made by Stella Hernandez.  (See Tr. at 140-41; Tr. of

9/28/15 at 13-14.)  Griffith testified that Stella Hernandez had told her that Hernandez

had not forged his grandparents' signatures.  (Tr. at 315.)  As to Giller's statement, which

Hernandez challenges on appeal, Hernandez argues that he lacked the requisite notice

prior to the statement being offered.  (Appellant's Mem. at 32-36 [Doc. No. 12].)  He

further contends that the testimony also fails to satisfy the other general requirements for

admissibility under the Rule 807 "catch-all" hearsay exception.  (Id.)

The residual exception to the hearsay rule permits a court to admit a hearsay

statement not otherwise covered by a hearsay exception if it has circumstantial guarantees

of trustworthiness and meets the other requirements of Rule 807, including materiality,

probative value, the interests of justice, and notice.  United States v. Halk, 634 F.3d 482,

488-89 (8th Cir. 2011) (citing United States v. Cree, 778 F.2d 474, 477 (8th Cir. 1985)).

Judge Ridgway ruled on the admissibility of Stella Hernandez's out-of-court statements,

offered by Giller and Griffith.[3]  (Tr. at 13-17.)  The Bankruptcy Court correctly

---

[3]  Notably, Hernandez does not address the admission of Stella Hernandez's
statements offered by his witness, Regina Griffith.  Judge Ridgway admitted the

enumerated the five required elements for the admission of evidence under Rule 807, (Tr. of 9/28/15 at 14-15 [Doc. No. 11]), and admitted the statements, "after an evaluation of all five of the elements required under the residual hearsay exception."  (<u>Id.</u> at 16-17.) While Judge Ridgway found that the statements were indeed hearsay, as they were offered to prove the truth of the matter asserted, he found that circumstantial guarantees of trustworthiness surrounded the statements, in that both Giller and Griffith "seem to have [had] the confidence of Stella Hernandez, both at different times, both for different reasons."  (Tr. at 15-16.)  The Court finds no error in that assessment, nor in finding that the challenged statement offered through Giller was probative, material, and that the interests of justice warranted its admission.

As to notice, Judge Ridgway found it was also satisfied.  (Tr. at 16-17.)  While he did not explicitly point to the notice given, the Credit Union's witness list included Vicki Giller and provided the following statement regarding her testimony, "Knowledge of Stella and Joseph Hernandez Powers of Attorneys and Stella Hernandez's Revocation of her Powers of Attorney."  (Pl.'s Witness List [Doc. No. 6-24].)

Rule 807 requires the proponent to give the adverse party "reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it."  Fed. R. Evid. 807(b). However, "[m]ost courts have interpreted the pretrial notice requirement somewhat flexibly, in light of its express policy of providing a party with a fair opportunity to meet

---

testimony through Griffith for the same reason that he admitted the testimony offered through Giller.  The testimony in question is directly contradictory.

the proffered evidence." Furtado v. Bishop, 604 F.2d 80, 92 (1st Cir. 1979).  Here, while

Hernandez might have predicted that Giller would offer an out-of-court statement made

by Stella Hernandez–just as the Credit Union might have predicted that Griffith would

offer a contrary, out-of-court statement made by Stella Hernandez–the general

information on Plaintiff's witness list did not expressly specify the particulars of Giller's

statement.[4]  Given that the Bankruptcy Court provisionally received and ultimately

admitted the contradictory evidence offered through Regina Griffith's testimony, and

permitted post-trial briefing addressing the contradictory out-of-court statements, under a

flexible application of Rule 807, the Court finds that Hernandez had a fair opportunity to

meet the challenged evidence offered though Giller's testimony.

But even applying the pretrial notice requirement strictly, and assuming for the

sake of argument that the element of notice was lacking, there is no showing of a

prejudicial abuse of discretion in admitting Giller's testimony in evidence.  Kelly, 206

F.3d at 802.  To the contrary, under the theory of "what's good for the goose [is good for

the gander]," the Bankruptcy Court admitted Stella Hernandez's essentially contradictory

out-of-court statements offered through witnesses for each party. (Tr. at 326; Tr. of

9/28/15 at 16-17.)  Judge Ridgway discounted the testimony of both Giller and Griffith,

noting that both had served as Stella Hernandez's attorney in fact, at different times, and

---

[4] As to the defense witness Griffith, Hernandez provided even less information on his witness list, as he initially did not even identify her by name, but merely stated that his sister might be called as a rebuttal witness.  (Def.'s Witness List [Doc. No. 6-29].)  He subsequently amended his witness list, identifying Regina Griffith by name as a rebuttal witness, but he provided no address, nor did he disclose any express statements that she would make.  (Def.'s Am. Witness List [Doc. No. 6-30].)

that Stella Hernandez had later revoked that authority as to each of them.  (Tr. of 9/28/15 at 25-26.)  He specifically stated that Giller's testimony gave him some pause, in light of this revoked authority.  (Tr. of 9/28/15 at 25.)  Moreover, Judge Ridgway noted that while the admissibility of the evidence was one thing, the weight to be accorded the evidence was another.  (Tr. of 9/28/15 at 16.)

In addition, there is no indication that the Bankruptcy Court actually relied on Giller's hearsay statement in issuing the findings of fact.  "When a judge in a bench tried case erroneously admits evidence but does not rely on that evidence in its findings of fact, the admission of the evidence is harmless error that does not warrant reversal."  Cox v. Fokkena (In re Cox), 315 B.R. 850, 857 (B.A.P. 8th Cir. 2004) (citing Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1057 (8th Cir.1997)).  Sufficient competent evidence supports the Bankruptcy Court's judgment here.  In his findings of fact, Judge Ridgway noted non-hearsay evidence submitted through Giller's testimony that her aunt and uncle had documents notarized across the street from their home in Ramsey County, as opposed to going to Hennepin County for notary services.  (Tr. of 9/28/15 at 16.)  Moreover, Stella Hernandez expressly disavowed the 2004 and 2005 POAs, revoking any power of attorney authority in them–authority that she claimed was "never" given to Hernandez.  (Trial Ex. 7.)  Notary Public Engh denied ever notarizing the 2005 POAs.  (Tr. at 103-04.)  Thus, as the Credit Union asserts, Giller's hearsay testimony about the fraud was simply cumulative, particularly in light of all the other competent evidence in the case, including Giller's own non-hearsay testimony, the testimony of the Ms. Engh, Stella Hernandez's affidavit revoking the 2004

and 2005 POAs, and the testimony of Michael Hernandez.  Accordingly, any error in introducing Stella Hernandez's out-of-court statement through Vicki Giller was harmless and does not warrant reversal.  For all of these reasons, this ground of Hernandez's appeal is rejected.

### 2.    Pioneer Press Newspaper Article

Hernandez also assigns error to the Bankruptcy Court's admission in evidence of a Pioneer Press newspaper article. (Trial Ex. 22.)  The October 2, 2011 article contains various statements attributed to Stella and Joseph Hernandez and Vicki Giller and is accompanied by several photographs of the Hernandezes.  (Id.)  The article addresses the Hernandez's pending eviction from their home and notes the allegations of family deceit in the then-dismissed state court lawsuit.  (Id.)

As a self-authenticating document under Federal Rule of Evidence 902(6), the article was shown to Ms. Engh to determine whether she recognized Stella and Joseph Hernandez from the photographs.  (Tr. at 105.)  In addition, the article was also shown to Giller, who, over defense counsel's hearsay objection, testified that she was interviewed for the article and believed the contents of the article to be true and accurate.  (Tr. at 147-48.)  Michael Hernandez also referred to the article in his testimony, describing certain allegations in the story as false.  (Tr. at 252.)  Finally, the article was shown to Griffith, who, over the foundation objections of counsel for the Credit Union, deemed the information in the article inaccurate.  (Tr. at 312-15.)  At trial, in response to defense counsel's objections, Judge Ridgway admitted the article in evidence for a limited purpose, noting that Giller was being interviewed, as were her aunt and uncle.  (Tr. at

149.)  He further stated that he, as the trier of fact, would give it such weight as was proper.  (Id.)

On appeal, Hernandez contends that the article contained inadmissible hearsay. (Appellant's Mem. at 32 [Doc. No. 12].)  Hernandez devotes one sentence fragment to this ground of appeal and cites no legal authority in support of his argument.  (Id.) Presumably, Hernandez objects to the use of the article in connection with Giller's testimony.  The Court finds no abuse of discretion in admitting the article as it was used here.  However, to the extent that the admission in evidence of the article was in error, there was no prejudice to Hernandez.  Kelly, 206 F.3d at 802.  As with the competing testimony of Giller and Griffith, discussed above, here too, Giller's testimony about the article was counter balanced by the testimony of Hernandez and Griffith.  Giller found the contents of the article to be true, (Tr. at 140-41), while Hernandez and Griffith disputed the contents of the article. (Tr. at 252; 312-15).   Moreover, Judge Ridgway did not refer to the article when rendering his findings of fact, and, in fact, sufficient competent evidence supports the Bankruptcy Court's judgment.  To the extent the Bankruptcy Court erred in admitting the evidence, any such error was harmless.  In re Cox, 315 B.R. at 857. For all of the forgoing reasons, this ground of appeal fails.

### 3.    Rulings on Exhibits

Finally, Hernandez argues that the Bankruptcy Court erred by "[a]llowing the [C]redit [U]nion to substitute exhibits from the exhibit book that had been provided in advance of trial, while at the same time precluding the defense from offering the document that had been removed."  (Appellant's Mem. at 32 [Doc. No. 12].)  Hernandez

contends that Judge Ridgway abused his discretion in not admitting in evidence Defendant's Exhibit BB, as Hernandez hoped to show the difference between Trial Exhibit 2, which was offered by Plaintiff and admitted in evidence, and Defendant's Exhibit BB.  (Id.)

Trial Exhibit 2 is the Loan, i.e., the March 11, 2005 loan for $100,000 from the Credit Union.  (Trial Ex. 2.)  It contains the signature of Michael Hernandez, on his own behalf, and Michael Hernandez, as power of attorney for Stella and Joseph Hernandez; it also includes the borrower's initials, "M.J.H," on the second page.  (Id.)  When he was shown Trial Exhibit 2, Hernandez testified that he had signed the Loan on his own behalf and as the attorney in fact on behalf of his grandparents.  (Tr. at 296-97.)

Defendant's Exhibit BB appears to be an earlier, incomplete version of the Loan that included only the signature of Michael Hernandez; also, it does not include the borrower's initials.  Reed, the Credit Union's witness, testified to the authenticity of Trial Exhibit 2, the more complete of the two documents, but was unable to attest to the authenticity of Defendant's Exhibit BB.  (Tr. at 85.)

The Bankruptcy Court initially sustained the Credit Union's objection to Defendant's Exhibit BB on grounds of foundation and relevance.  (Tr. at 86-87.)  In addition, the Bankruptcy Court found that the document was not properly disclosed as a trial exhibit.  (Tr. at 87.)  After entertaining argument from counsel about the identification and disclosure of the document, the Court reserved ruling on its admissibility.  (Tr. at 89.)   Ultimately, the document was not admitted in evidence.

The trial transcript shows that the parties disagreed about the circumstances of the

identification and disclosure of the document.  (Tr. at 86-89.)  But equally clear, the

Credit Union's witness authenticated and vouched for the document admitted as Trial

Exhibit 2.  (Tr. at 85.)  He could not do so for Defendant's Exhibit BB.  (Id.)  Hernandez

himself acknowledged that he had signed Trial Exhibit 2, on his own behalf and as power

of attorney for his grandparents.  (Tr. at 296-97.)  Under these circumstances, the Court

sees no error in the Bankruptcy Court's decision to not admit Defendant's Exhibit BB in

evidence.

### D.     Fraud

Michael Hernandez argues that the Bankruptcy Court's finding of fraud was

clearly erroneous.  He contends that the facts of the case do not warrant the application of

§ 523(a)(2)(A) for several reasons.  (Appellant's Mem. at 15-16 [Doc. No. 12].)

Hernandez asserts that he held valid powers of attorney–the 2004 POAs–at the time of the

2005 closing.  (Id. at 16-17.)  In addition, he argues that because he did not sign the 2005

POAs, they did not meet the requirements for powers of attorney under Minnesota law

and therefore the Credit Union could not have justifiably relied upon them.  (Id. at 18-19.)

### 1.     Section 523(a)(2)(A) Elements

In certain circumstances, the Bankruptcy Code permits individual debtors to

discharge their debts pursuant to 11 U.S.C. § 727.   As a general proposition, "courts are

to construe exceptions to discharge narrowly in deference to the fresh-start policy of the

Bankruptcy Code."  Murrin v. Scott (In re Scott), 403 B.R. 25, 34 (Bankr. D. Minn. 2009)

(citing In re Miller, 276 F.3d 424, 429 (8th Cir. 2002); Geiger v. Kawaauhau (In re

Geiger), 113 F.3d 848, 853 (8th Cir.1997), aff'd, 523 U.S. 57 (1998)).  One such

exception to bankruptcy discharge arises under 11 U.S.C. § 523(a)(2)(A).  "Section

523(a)(2)(A) of the Bankruptcy Code prevents persons from committing actual fraud and

then wiping away their resulting debt."  In re Miller, 276 F.3d at 429.  Section

523(a)(2)(A) provides, in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an
> individual debtor from any debt . . . for money, property, services, or an
> extension, renewal, or refinancing of credit, to the extent obtained by . . .
> false pretenses, a false representation, or actual fraud . . . .

11 U.S.C. § 523(a)(2)(A).  In order to establish that a debt falls within the Bankruptcy

Code's exception for false pretenses, false representation, or actual fraud, a creditor must

prove by a preponderance of the evidence that: (1) the debtor made a representation, (2) at

the time the debtor knew that the representation was false, (3) the debtor made the

representation deliberately and intentionally with the intention and purpose of deceiving

the creditor, (4) the creditor justifiably relied on such representation, and (5) the creditor

sustained the alleged loss and damage as the proximate result of the representation having

been made.  11 U.S.C. § 523(a)(2)(A); Countrywide Home Loans, Inc. v. Blair (In re

Blair), 324 B.R. 725, 729 (8th Cir. 2005) (citing Merchants Nat'l Bank of Winona v.

Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999)).

### a.    Representation and Contemporaneous Knowledge of False Representation

Judge Ridgway's finding that Hernandez represented to the Credit Union that he

held a valid 2005 POA on behalf of Stella and Joseph Hernandez is supported by the

record.  The Bankruptcy Court found that Hernandez presented the Credit Union with the

2005 POAs, which purportedly gave him authority to act as the attorney in fact for his

grandparents.  (Tr. of 9/28/15 at 31-32; Tr. Exs. 4 & 5.)   In addition, the Bankruptcy

Court found that by signing the Affidavit by Attorney in Fact, Hernandez represented to

the Credit Union that the 2005 POAs were authentic and that he was authorized to sign

the loan agreement and mortgage as attorney in fact.  (Tr. of 9/28/15 at 31-32; Trial Ex.

6.)

      Based on the testimony and evidence at trial, the Court finds no clear error in the

Bankruptcy Court's ruling that the 2005 POAs and Hernandez's Affidavit by Attorney in

Fact constituted knowingly false representations with respect to the 2005 Loan.  (Tr. of

9/28/15 at 25.)  In reaching this conclusion, the Bankruptcy Court relied on testimony that

the 2004 POAs "were not part of the loan that was made to Michael Hernandez in 2005."

(Id.)

      Hernandez, however, contends that this finding was clear error.  He argues that he

referred to the 2004 POAs in his Affidavit by Attorney in Fact – not the 2005 POAs – and

that the 2004 POAs were valid.  (Appellant's Mem. at 17-18 [Doc. No. 12].)  He further

contends that the Credit Union relied on the 2004 POAs in making the Loan in 2005.

(Id.)  Finally, Hernandez asserts that the 2005 POAs were not valid because he did not

sign them.  (Id.)

      The Court disagrees with each of Hernandez's assertions.  First, the evidence

shows that the 2004 POAs were as fraudulent as the 2005 POAs.  Stella Hernandez

expressly revoked both the 2004 and 2005 POAs, attesting that she never gave Michael

Hernandez power of attorney in either of the documents.  (Trial Ex. 7.)

Second, regarding Hernandez's argument that the Credit Union actually relied on the 2004 POAs in making the 2005 Loan, he argues that the Bankruptcy Court "erroneously stated that Mr. Ross said that the 2004 POAs were not part of the 2005 loan to Hernandez." (Appellant's Mem. at 20 [Doc. No. 12].)  However, the Credit Union's witness testified that the 2005 POAs were the applicable POAs used in connection with the 2005 Loan.  (Tr. at 22-23.)  In addition, the Affidavit by Attorney in Fact, also part of the 2005 Loan submission, states that Hernandez "is the Attorney-in-Fact (or agent) named in that certain Power of Attorney dated March 8, 2005 . . . executed by Joseph Hernandez and Stella R. Hernandez."  (Trial Ex. 6.)  The Credit Union's witness testified that by signing the Affidavit, Hernandez was "telling us that he, in fact, does have the power of attorney for Joseph and Stella Hernandez."  (Tr. at 27.)  Based on the evidence, the Court finds no error in the Bankruptcy Court's finding that the Credit Union considered the 2005 POAs in connection with the Loan in 2005, as opposed to the 2004 POAs, and relied upon the 2005 POAs in issuing the Loan.

Regarding Hernandez's argument that the 2005 POAs were invalid because he did not provide a specimen signature as attorney in fact on the space provided, the short form power of attorney statute in effect at the time did not expressly require the attorney in fact's signature.  See Minn. Stat. § 523.23, subd. 1 (1998).  Rather, the form contained a line for the specimen signature for the attorney in fact, but the statute did not specify that the attorney in fact's signature was required for the power of attorney to be effective.  Id. While the statute did not require the attorney in fact's signature, the principal's signature and acknowledgment of signature were expressly required.  Id., subd. 3.  Subsequently,

the statute was amended in 2013 to include the requirement of signature by the attorney in fact.  Minn. Stat. § 523.23, subd. 1 (2013).  However, the amendment was not effective in 2005 and, even when amended, did not invalidate a power of attorney executed prior to the effective date of the 2013 amendments. See id., subd. 6.  Mr. Ross, the Credit Union's witness, testified that the Credit Union relied on the 2005 POAs and the Affidavit by Attorney in Fact, signed by Hernandez, in which he attested to his authority as attorney in fact for his grandparents.  (Tr. at 28.)   The Court therefore finds no clear error in the Bankruptcy Court's findings concerning the 2005 POAs.

Hernandez also argues that the Bankruptcy Court erred in finding that the Credit Union established the § 523(a)(2)(A) elements requiring that the debtor know of the falsity of his representation at the time of making it and that the debtor deliberately and intentionally made the false statement to deceive the creditor.  (Appellant's Mem. at 21-25 [Doc. No. 12].)  The Court disagrees.  The testimony of Notary Public Engh, on which Judge Ridgway placed significant weight, demonstrated that she did not notarize the 2005 POAs, despite the fact that they purportedly bore her notary public stamp and signature. (Tr. at 103-04.)  Moreover, while the notary's acknowledgment in the 2005 POAs indicates that they were notarized in Hennepin County, (Tr. Exs. 4 & 5), Giller testified that her aunt and uncle did not drive at the time, did not have a car, and typically notarized any documents in Ramsey County, directly across the street from their house. (Tr. at 150-51.)  Stella Hernandez herself, in her affidavit, expressly revoked both the 2004 and 2005 POAs, asserting that the power of attorney authority had never been given in the first place.  (Trial Ex. 7.)  Yet, in support of the 2005 Loan, on March 11, 2005,

Michael Hernandez signed the Affidavit by Attorney in Fact, attesting that he held valid power of attorney authority by virtue of the 2005 POAs.  (Trial Ex. 6.)  This evidence sufficiently demonstrates contemporaneous knowledge of the falsity of the representation and that Hernandez deliberately submitted the documents with the intention to deceive the Credit Union, as the Bankruptcy Court found.  (9/28/16 Tr. at 31.)

### b.      Reliance on the Representation and Damage

The evidence also supports the Bankruptcy Court's finding that the Credit Union justifiably relied on the 2005 POAs and the Affidavit by Attorney in Fact submitted by Appellant.  Ross, the Credit Union's witness stated that the Credit Union relied upon the 2005 POAs and the Affidavit by Attorney in Fact.  (Tr. at 28-29.)   By signing the Affidavit by Attorney in Fact, Ross testified that Hernandez was "telling us that he does have the authority by these individuals [the Hernandezes]."  (Tr. at 28.)  In addition, Ross stated that the Credit Union had no reason to question the documents submitted, and would not have proceeded with the Loan absent the 2005 POAs and the Affidavit by Attorney in Fact.  (Tr. at 29.)  While Hernandez argues that such reliance was not justifiable because the 2005 POAs did not contain Hernandez's signature specimen, this was not a legal requirement in 2005, as noted above.  Hernandez signed the Loan on his own behalf and in his capacity as attorney in fact for his grandparents.  (Tr. at 207; Trial Ex. 2.)

Finally, Ross testified that as a result of Hernandez's default, the Credit Union sustained a loss in the amount of $122,115.25.  (Tr. at 59; see also Trial Ex. 15.)  Ross explained that the loss amount includes the principal balance, the interest rate, and the per

diem amount that was charged in interest on the loan.  (Id.)  Because the finding of proximate loss in this amount is supported by the evidence, the Court finds no error in the Bankruptcy Court's finding as to this element.

### E.    Fifth Amendment

Hernandez argues on appeal that the Bankruptcy Court improperly drew an adverse inference based on Hernandez's invocation of his Fifth Amendment right against self-incrimination.  (Appellant's Mem. at 29.)   Counsel for the Credit Union asked Hernandez the following question about the 2004 loan application for $222,000, which prompted Hernandez to invoke the Fifth Amendment: "Did you, by any chance, provide false information in connection with your application for the loan regarding who you had as a tenant on your income property?"  (Tr. at 291.)   However, shortly after invoking the Fifth Amendment privilege in response to the Credit Union's question, Hernandez's own counsel asked, "Mr. Hernandez, did you ever knowingly submit a false document to General Mills Credit Union in efforts to obtain a loan?"  (Tr. at 299-300.)  Hernandez denied doing so.  (Tr. at 300.)

Hernandez points to his response to his own counsel's question, arguing that because he answered that question, a negative inference from his earlier invocation of the Fifth Amendment privilege was inappropriate.  (Appellant's Mem. at 30 [Doc. No. 12].) Hernandez also contends that based on his assertion of the Fifth Amendment, the Bankruptcy Court improperly found that "[he]  was committing a fraud." (Id. at 23.)  The Court disagrees with both of these contentions.

The finder of fact in a civil action is permitted to draw an adverse inference when a

witness invokes the Fifth Amendment privilege against self-incrimination.  Baxter v.

Palmigiano, 425 U.S. 308, 318 (1976);  Rosebud Sioux Tribe v. A & P Steel, Inc., 733

F.2d 509, 521 (8th Cir. 1984).  Because bankruptcy proceedings are civil actions, an

adverse inference may be drawn from the invocation of the Fifth Amendment by a

witness in bankruptcy court.  As the Bankruptcy Court observed, before making the

inference, however, other evidence must tend to prove each element of the case.  In re

Curtis, 177 B.R. at 720. When other proof of each element is offered, the trier of fact may

add the adverse inference to the weight of evidence.  Id.

The Bankruptcy Court did not err in making an adverse inference.  To the contrary,

in its findings of fact, the Bankruptcy Court noted that the inference drawn from

Hernandez's invocation of the Fifth Amendment did not by itself establish fraud under

§ 523(a)(2)(a), but when considered with the other evidence that the Credit Union

produced at trial, it added to the weight of the evidence.  (Tr. of 9/28/15 at 28-31.)  This is

appropriate under the law.  See In re Curtis, 177 B.R. at 720.

Moreover, as a factual matter, the question that prompted Hernandez to invoke the

Fifth Amendment, and the question posed by his own attorney, which he answered, were

not the same.  One question specifically asked if Hernandez had submitted false

information concerning a tenant, while the other asked if Hernandez had submitted a false

document.  (Compare Tr. at 291, with Tr. at 299-300.)  Thus, the fact that Hernandez

actually answered his counsel's question–a different question–but invoked the Fifth

Amendment in response to the Credit Union's question, did not somehow negate his

assertion of the Fifth Amendment privilege or make an adverse inference improper.  For

all of these reasons, this ground of Hernandez's appeal fails.

### F.    Witness Credibility

Hernandez also takes issue with the Bankruptcy Court's observation that he personally benefitted from the various loans, arguing that by doing so, the Bankruptcy Court essentially concluded "that because Mr. Hernandez spent the funds, that therefore he intentionally committed a fraud." (Appellant's Mem. at 24 [Doc. No. 12]) (citing 9/28/15 Tr. at 21.) Hernandez argues that there was nothing fraudulent about using the funds for his own personal use. (Id.) In support of his argument, he points to the testimony of the Credit Union's witness indicating that the funds could be used for any purpose. (Id. at 24-25) (citing Tr. at 14; 90-91.)

The Court finds that Hernandez's characterization of the Bankruptcy Court's ruling is inaccurate. Hernandez cites the portion of the transcript in which Judge Ridgway simply sets forth the findings of fact, noting that "in 2005, Michael Hernandez withdrew almost the entire $100,000 for his personal benefit in a matter of weeks resulting in a total debt of $332,300.00. . . ." (Id. at 24) (citing Tr. of 9/28/15 at 21.) Later, in the Bankruptcy Court's oral findings of facts and conclusions of law, Judge Ridgway examined the credibility of the witnesses, describing certain witnesses as relatively disinterested individuals, such as Cheryl Engh, and others as persons with vested interests. (Tr. of 9/28/15 at 27-28.) Commenting on Michael Hernandez's testimony, Judge Ridgway observed that "a couple of things about his testimony . . . didn't quite ring true." (Tr. of 9/28/15 at 27.) In this context, Judge Ridgway noted that Hernandez derived much of the benefit of the Loan at issue. (Id. at 28.) The Court

construes this observation, in this context, to bear on Hernandez's credibility, as it concerns his self interest and motivation as a witness.  Notably, contrary to Hernandez's assertion, the Bankruptcy Court did not find that because Hernandez personally benefitted from the loans, he committed fraud.  For all of these reasons, this ground of appeal also fails.

In conclusion, the Court finds no clear error in the Bankruptcy Court's finding that the Credit Union established, by a preponderance of the evidence, that Hernandez's debt to the Credit Union was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  Nor does the Court accept any of Hernandez's other bases of appeal.  The Court therefore denies Appellant's Appeal and affirms the ruling of the Bankruptcy Court as reflected in that court's September 29, 2015 Order for Judgment and September 29, 2015 Judgment.

**THEREFORE, IT IS HEREBY ORDERED that:**

1.      Appellant's Appeal from Bankruptcy Court is **DENIED**; and

2.      The Bankruptcy Court's September 29, 2015 Order for Judgment and September 29, 2015 Judgment are **AFFIRMED**.


Dated: June 13, 2016

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge